**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
8444 Westpark Drive – Suite 510
McLean, Virginia  22102
Telephone:  (703) 245-9300
Facsimile:  (703) 245-9301
William G. Gandy  (WG 9518)

JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Corinne Ball (CB 8203)

JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia  30309-3053
Telephone:  (404) 521-3939
Facsimile:  (404) 581-8330
Jeffrey B. Ellman (JE 5638)
Joseph E. Finley (JF 0270)

Attorneys for Appellee Dana Corporation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Dana Corporation, *et al.*, | : | Bankruptcy Case No. 06-10354 (BRL) |
| | : | |
| Debtors | : | Jointly Administered |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | : | |
| | : | |
| JASCO TOOLS, INC. | : | District Court Case No. 07-CV-11144 |
| | : | |
| Appellant, | : | Judge Richard M. Berman |
| | : | |
| vs. | : | |
| | : | |
| DANA CORPORATION, | : | |
| | : | |
| Appellee. | : | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | : | |

**<u>APPELLEE'S BRIEF</u>**

## TABLE OF CONTENTS

**Page No.**

A.  The Bankruptcy Court Acted Properly By Treating The Objection as a Motion for Summary Judgment ................................................................................ 9

B.  The Bankruptcy Court Did Not Deprive Jasco of Its Right to Due Process ......... 11

C.  The Bankruptcy Court Properly Determined That No Further Discovery Was Needed ............................................................................................ 13

    1.  The Bankruptcy Court Did Not Abuse Its Discretion in Denying Jasco's Demand for Additional Discovery ............................................. 13

    2.  Jasco Waived Its Right to Object to the Bankruptcy Court's Decision Not to Permit Further Discovery Because Jasco Failed to File the Required Rule 56(f) Affidavit. ........................................................ 15

D.  The Bankruptcy Court Properly Determined That Dana Demonstrated a Prima Facie Entitlement to Summary Judgment ........................................... 16

E.  The Bankruptcy Court Properly Granted Summary Judgment to Dana Because There Were No Genuine Issues of Material Fact ..................................... 17

    1.  The Bankruptcy Court Properly Held That There Was No Breach of Contract Because The Agreement to Negotiate Is Unenforceable as a Matter of Law ......................................................................... 17

    2.  The Bankruptcy Court Properly Granted Summary Judgment to Dana Because, as a Matter of Law, No Conversion Occurred. .......................... 20

        (a)  No evidence exists showing that anyone ever informed Dana of the alleged misappropriation of Jasco's trade secrets ...................... 22

        (b)  Jasco's inference that Dana knew of the misappropriation from Nationwide's PowerPoint presentation is pure speculation .......... 23

        (c)  Jasco impermissibly infers evidence of a conspiracy from telephone records without any evidence about the subject of the calls ...................................................................... 24

        (d)  It cannot reasonably be inferred from Nationwide's ten-percent price reduction that Dana knew of or participated in a scheme to misappropriate Jasco's trade secrets ..................................... 25

        (e)  Jasco otherwise failed to present facts sufficient to raise a "genuine issue" for trial ......................................................... 26

    3.  The Bankruptcy Court Properly Found That, As a Matter of Law, Dana Was Not Unjustly Enriched. ............................................................. 27

    4.  The Bankruptcy Court Properly Found That Jasco Failed to Present Any Facts to Support a Claim for Prima Facie Tort ........................................ 27

# TABLE OF AUTHORITIES

## FEDERAL CASES

<u>Page No.</u>

<u>Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.</u>, 769 F.2d 919 (2d Cir. 1985) ................................................................................................16

<u>Candid Products, Inc. v. Int'l Skating Union</u>, 530 F. Supp. 1330 (S.D.N.Y. 1982) .....................17

<u>Cross Media Mktg. Corp. v. CAB Mktg., Inc.</u>, 367 B.R. 435 (Bankr. S.D.N.Y. 2007)...............27

<u>In re CIS Corp.</u>, No. 91 Civ. 6075 (LJF), 1991 WL 253777 (Bankr. S.D.N.Y. Nov. 19, 1991) ................................................................................................13

<u>In re Dana Corp.</u>, Case No. 06-10354 (BRL), 2007 Bankr. LEXIS 3923 (Bankr. S.D.N.Y. Nov. 6, 2007) ...................................................................... *passim*

<u>In re Ionosphere Clubs, Inc.</u>, 922 F.2d 984 (2d Cir. 1990), <u>cert. denied</u>, 502 U.S. 808 (1991).......................................................................................3

<u>Gen. Motors Corp. v. Keener Motors, Inc.</u>, 194 F.2d 669 (6th Cir. 1952) ..............................17, 19

<u>Goetzke v. Ferro Corp</u>, 280 F.3d 766 (7th Cir. 2002) ....................................................25

<u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9 (2d Cir. 1986) ................................................22

<u>Konikoff v. Prudential Ins. Co. of Am.</u>, 234 F.3d 92 (2d Cir. 2000)..........................................15

<u>Liberty Mut. Ins.  Co. v. York Hunter, Inc.</u>, 945 F. Supp. 742 (S.D.N.Y. 1996) .........................27

<u>Martin v. O'Conner</u>, 225 B.R. 283 (Bankr. N.D.N.Y. 1998).........................................................3, 13

<u>Matsushita Electric Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 ...........................................24

<u>Maxus Leasing Group, Inc. v. Kobelco Am., Inc.</u>, No. 5:04-CIV-518 (FJS/DEP), 2007 U.S. Dist. LEXIS 13312 (N.D.N.Y. Feb 26, 2007) .........................................................28

<u>Murphy v. IBM Corp.</u>, 23 F.3d 719 (2d Cir. 1994) ....................................................15

<u>N.B.C. v. Rockefeller Ctr. Props.</u>, 266 B.R. 52 (Bankr. S.D.N.Y. 2001)..............................15, 16

<u>Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Stroh Cos.</u>, 265 F.3d 97 (2d Cir. 2001) ..............15

Necchi S.p.A. v. Necchi Sewing Machine Sales Corp., 348 F.2d 693 (2d Cir. 1965) ............19, 20

Opals on Ice Lingerie v. Body Lines Inc., 320 F.3d 362 (2d Cir. 2003) .......................22

Paddington Partners v. Bouchard, 34 F.3d 1132 (2d Cir. 1994)....................................15

Shumway v. UPS, Inc., 118 F.3d 60 (2d Cir. 1997) ......................................................15

Sigmon v. Parker Chapin Flattau & Klimpl, 901 F. Supp. 667 (S.D.N.Y. 1995)...................27, 28

S. N. Phelps & Co. v. The Circle K Corp. (In re The Circle K Corp)., Nos. 96 Civ. 5801
    (JFK) and 96 Civ. 6479 (JFK), 1997 WL 31197 (S.D.N.Y. Jan. 28, 1997) .....................13

In re Sugarhouse Realty, Inc., 192 B.R. 355 (Bankr. E.D. Pa. 1996)............................16

United States v. Mitchell, 966 F.2d 92 (2d Cir. 1992)....................................................3

U.S. Trustee v. Andover Togs, Inc. (In re Andover Togs, Inc)., Nos. 96 Civ. 7601 (DAB)
    and 97 Civ. 6710,  2001 WL 262605 (S.D.N.Y. Mar. 15, 2001)..................................3, 13

Zervos v. Verizon N.Y., Inc., 252 F.3d 163 (2d Cir. 2001)..........................................13

## STATE CASES

Ashland Management, Inc. v. Janien, 82 N.Y.2d 395, 604 N.Y.S.2d 912 (1993).......................21

Friehofer v. Hearst Corp., 65 N.Y.2d 135, 490 N.Y.S.2d 735 (1985)...........................27

Marietta Corp. v. Fairhurst, 301 A.D.2d 734, 754 N.Y.S.2d 62 (3d Dept. 2003) ........................24

May Metropolitan Corp. v. May Oil Burner Corp., 290 N.Y. 260 (1943) .....................18

Metromedia, Inc. v. The Greater Cleveland Regional Transit Authority, No. 39743, 1979
    Ohio App. LEXIS 11970 (Ohio Ct. App. Jan. 11, 1979)...................................17

Reed Roberts Assoc. v. Strauman, 40 N.Y.2d 303, 386 N.Y.S.2d 677 (1976) .............................24

Royce Haulage Corp. v. Bronx Terminal Garage, Inc., 57 N.Y.S.2d 760 (App. Term Sup.
    Ct. 1945) ........................................................................................17

W.A. Inc. v. Romocean, No. 10358, 1982 WL 4930 (Ohio Ct. App. March 24, 1982)...............17

## FEDERAL STATUTES

11 U.S.C. § 502 ....................................................................................................................10

28 U.S.C. § 158(a)(1) ............................................................................................................1

Fed.R.Civ.P. 56 ...............................................................................................9, 10, 13, 15, 16

Fed.R.Bankr.P. 7056 .......................................................................................................9, 10

S.D.N.Y Local Bankruptcy Rule 7056-1 ........................................................................11, 12

## SECONDARY SOURCES

Restatement (First) of Torts § 757 (1939) ...........................................................................21

Restatement (First) of Torts § 758 (1939) .......................................................................22, 23

Appellee Dana Corporation ("Dana" or "Appellee") and the other above-captioned chapter 11 debtors and debtors in possession (collectively with Dana, the "Debtors") hereby file their Opening Brief in opposition to the appeal by Jasco Tools, Inc. ("Jasco" or "Appellant") of the *Memorandum Decision Denying Motion For Abstention and Stay Relief and Granting Summary Judgment Disallowing Claim* (R. 14-28)[1] (the "Decision"), issued on November 6, 2007, by Judge Burton R. Lifland, United States Bankruptcy Judge for the Southern District of New York (the "Bankruptcy Court"). See In re Dana Corp., Case No. 06-10354 (BRL), 2007 Bankr. LEXIS 3923, 2007 WL 3376882 (Bankr. S.D.N.Y. Nov. 6, 2007).[2]  On November 15, 2007, the Bankruptcy Court entered an order consistent with this Decision.

## STATEMENT OF APPELLATE JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(l).

## ISSUES PRESENTED

While Appellant's brief fails to separately address each of the thirteen issues it raises on appeal, those thirteen issues, as identified by the Appellant, are as follows:

1. Did the Bankruptcy Court err in granting the request of Dana, over Jasco's objection, to consider the Objection of Debtors and Debtors in Possession Seeking to Disallow Claims of Jasco Tools, Inc. ("Objection") as the equivalent of a summary judgment motion, despite Jasco's allegations of procedural deficiencies in the Objection as a summary judgment motion?

2. Did the Bankruptcy Court err in considering Dana's Objection as the equivalent of a summary judgment motion, despite Jasco's allegations of a lack of proof, in evidentiary form, submitted in support of the motion?

3. Did the Bankruptcy Court err in granting the request of Dana, over Jasco's objection, to consider Jasco's Response to Dana's Objection ("Response") as Jasco's

---

[1] All citations in the form "R. ___" refer to the courtesy copy of the Record on Appeal provided to the Court by Appellant.  For convenience of the Court, all citations will refer to the Record on Appeal whenever possible.

[2] Abbreviated herein for citation purposes as "Decision at __."  For purposes of consistency, all citations to the Decision in this brief will be to the slip copy issued by the Bankruptcy Court, which is located in the Record on pages R. 14 through R. 28.

response to Dana's putative summary judgment motion, despite Jasco's claim that it submitted its Response prior to allegedly receiving any notice that either Dana or the Court intended to consider the Objection to be the equivalent of a summary judgment motion?

4. Did the Bankruptcy Court err in requiring Jasco to submit its response to Dana's Rule 7056-1 Statement before allegedly seeing Dana's Rule 7056-1 Statement?

5. Did the Bankruptcy Court err in allegedly stating, at the Initial Status Conference, that it was prepared to rule on Dana's summary judgment motion, on the merits, before setting a briefing schedule for the motion, before allegedly receiving all of the motion papers in connection with the motion, and before hearing the argument of counsel in connection with the motion?

6. Did the Bankruptcy Court err in dismissing Jasco's alleged need for additional discovery, and in allegedly ignoring Jasco's pending document request, served in another action prior to the filing of Dana's bankruptcy petition, without alleged consideration of the actual contents of the pending document request?

7. Did the Bankruptcy Court err in allegedly relying on the language of a state court trial judge, ruling on the summary judgment motion of another defendant sued by Jasco, where the decision of the state court trial judge was subsequently reversed on appeal?

8. Did the Bankruptcy Court err in granting summary judgment to Dana, without allegedly considering the requirement of Rule 56(f) of the Federal Rules of Civil Procedure, and despite Jasco's allegation that it was deprived of the opportunity to present facts necessary to oppose Dana's summary judgment motion by Dana's alleged refusal to disclose requested documents?

9. Did the Bankruptcy Court err in granting summary judgment to Dana, upon the first cause of action alleged by Jasco against Dana in the underlying state court action, alleging a claim for breach of contract, despite Jasco's allegations of numerous genuine issues of material fact in connection with said cause of action?

10. Did the Bankruptcy Court err in granting summary judgment to Dana, upon the second cause of action alleged by Jasco against Dana in the underlying state court action, alleging a claim for conversion, despite Jasco's allegations of numerous genuine issues of material fact in connection with said cause of action?

11. Did the Bankruptcy Court err in granting summary judgment to Dana, upon the third cause of action alleged by Jasco against Dana in the underlying state court action, alleging a claim for unjust enrichment, despite Jasco's allegations of numerous genuine issues of material fact in connection with said cause of action?

12. Did the Bankruptcy Court err in granting summary judgment to Dana, upon the fourth cause of action alleged by Jasco against Dana in the underlying state court

action, alleging a claim for *prima facie* tort, despite Jasco's allegations of numerous genuine issues of material fact in connection with said cause of action?

13.  Did the Bankruptcy Court err in disallowing and expunging Jasco's Claim Number 9592, in the amount of $20,000,000, without allegedly giving Jasco a hearing, without allegedly considering that additional discovery had been requested, and was need, by Jasco, without allegedly considering the requirements of Rule 56(f) of the Federal Rules of Civil Procedure, and despite Jasco's allegations of numerous genuine issues of material fact in connection with each cause of action alleged by Jasco in the underlying state court action?

(App. Br. at 1-3.) [3]

## <u>STANDARD OF REVIEW</u>

On appeal, the Bankruptcy Court's findings of fact must be accepted unless clearly erroneous, while its conclusions of law are reviewed *de novo*.  <u>In re Ionosphere Clubs, Inc.</u>, 922 F.2d 984, 988-89 (2d Cir. 1990), <u>cert.</u> <u>denied</u>, 502 U.S. 808 (1991).  A finding is clearly erroneous only when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  <u>United States v. Mitchell</u>, 966 F.2d 92, 98 (2d Cir. 1992).

This Court reviews matters falling within the discretion of the Bankruptcy Court, such as discovery issues, under the "abuse of discretion" standard.  <u>Martin v. O'Conner</u>, 225 B.R. 283, 286 (Bankr. N.D.N.Y. 1998).  An abuse of discretion may be found "only . . . where (1) the decision was based on an erroneous conclusion of law; (2) the record contains <u>no</u> evidence on which the judge could have based his decision; or (3) supposed facts found are erroneous as found."  <u>U.S. Trustee v. Andover Togs, Inc. (In re Andover Togs, Inc)</u>., Nos. 96 Civ. 7601 (DAB) and 97 Civ. 6710 (DAB), 2001 WL 262605, at *2 (S.D.N.Y. Mar. 15, 2001) (emphasis added) (<u>quoting</u> <u>In re Integrated Resources, Inc.</u>, 157 B.R. 66, 72 (Bankr. S.D.N.Y. 1993)).

---

[3] All references to Appellant's Brief will be cited as "App. Br. at ___."  Appellant initially raised 17 issues for appeal.  (R. 5-8.)  Apparently, Appellant has dropped four of those issues.

## STATEMENT OF THE CASE

### Preliminary Statement

This appeal arises from the Bankruptcy Court's disallowance of proof of claim number 9592 filed by Jasco in Dana's chapter 11 case (the "Jasco Claim").  The Jasco Claim did not arise out of any legitimate obligation of Dana.  Rather, it resulted from Jasco's displeasure with a business decision by Dana more than seven years ago to allow the Purchase Agreement between the parties to expire under its own terms.  Jasco initially pursued its claims via a lawsuit filed in the New York Supreme Court, Monroe County (the "State Court"), where it had nearly four years to conduct discovery, including the depositions  of 18 witnesses.  When the state court lawsuit was stayed as a result of Dana's chapter 11 filings, Jasco pursued recovery in the Bankruptcy Court through the Jasco Claim.  Dana filed an Objection to Jasco's Claim.  After briefing and oral argument, the Bankruptcy Court properly ruled that Jasco could not prove its claims as a matter of law, and thus summary judgment was warranted and the Jasco Claim was disallowed and expunged.

The Jasco Claim was based on four alleged causes of action:  a claim for breach of contract and three related tort claims arising from an alleged misappropriation of trade secrets. The contract claim was premised entirely on a provision in the parties' Purchase Agreement that stated:  "The parties agree to meet in the second quarter of the year 1999 to negotiate an extension to the term."  Relying on a well-settled body of law, the Bankruptcy Court held that renewal provisions that depend on the parties' negotiation of a future agreement are unenforceable and cannot give rise to damages.  In its appellate brief, Jasco fails to address or distinguish the case law relied on by the Bankruptcy Court.  Because the Bankruptcy Court's decision is legally sound, it should be affirmed.

Jasco's tort claims are premised on an alleged conspiracy between Dana and the supplier that replaced Jasco, Nationwide Precision Products Corp. ("Nationwide"), to divert business away from Jasco. The Bankruptcy Court properly found that "there is no evidence connecting Dana to the alleged conspiracy." (Decision at 12; R. 25.) The Bankruptcy Court also found additional factual and legal deficiencies with Jasco's tort claims, which warranted judgment against Jasco as a matter of law. Once again, Jasco makes no effort to address the Bankruptcy Court's reasoning or legal conclusions, choosing instead to simply reiterate the same scattershot arguments it unsuccessfully made before the Bankruptcy Court.

In sum, the Bankruptcy Court, working with a record developed after nearly four years of discovery in the underlying state court lawsuit, found no factual or legal basis for Jasco's claims. Jasco has failed to show clear error in the Bankruptcy Court's factual findings or legal error in its conclusions of law. For these reasons, and those that follow, the Decision of the Bankruptcy Court should be affirmed.

## **Procedural History**

On March 3, 2006 (the "Petition Date"), the Debtors filed voluntary petitions in the Bankruptcy Court for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On September 18, 2006, Jasco filed proof of claim number 9592 (R. 32-33) seeking an unsecured nonpriority claim against Dana's Chapter 11 estate in the amount of $20,000,000.00. The Debtors filed their Objection of Debtors and Debtors in Possession Seeking to Disallow Claim of Jasco Tools, Inc. (R. 63-357) (the "Objection") on August 31, 2007. Jasco filed its Response to Debtors' Objection to Claim of Jasco Tools, Inc. (R. 358-503) (the "Response to the

Objection") on September 20, 2007, and Dana filed its Reply in Support of the Objection of

Debtors and Debtors in Possession  Seeking to Disallow Claim of Jasco Tools, Inc.  (R. 504-46)

(the "Reply") on October 12, 2007.  The Bankruptcy Court then held a status conference on

October 17, 2007.  (R. 643-51.)  One week later, the parties filed their Rule 7056-1 statements.

(R. 652-67.)  That same day, Jasco filed its Motion for Mandatory Abstention, Pursuant to

28 U.S.C. § 1334(c)(2), and for Lifting the Automatic Stay, Pursuant to 11 U.S.C. § 362(d)(1)

(R. 668-82) (the "Abstention Motion"), which Dana responded to on October 29, 2007.  (R. 683-

93.)  The Bankruptcy Court then heard oral argument regarding both Dana's Objection to the

Jasco Claim and Jasco's Abstention Motion on October 31, 2007.  (R. 738-58.)  On November 6,

2007, the Bankruptcy Court issued the Decision denying the Abstention Motion and disallowing

the Jasco Claim (R. 14-28), followed by its Order Disallowing Claims of Jasco Tools, Inc. and

Denying Motion for Mandatory Abstention, Pursuant to 28 U.S.C. § 1334(c)(2), and for Lifting

the Automatic Stay, Pursuant to 11 U.S.C. § 362(d)(1) (R. 29-31) (the "Order"), which was

entered on November 15, 2007, consistent with the Decision (R. 29-31).  Jasco filed the instant

appeal on November 13, 2007, two days before the Order was entered.  (R. 1-3.)

## Statement of Facts

In its Decision, the Bankruptcy Court accurately recited the material facts based on the

evidence presented.  On appeal, Jasco ignores the Bankruptcy Court's factual findings and

instead submits a statement of facts based on the self-serving Declaration of Jasco's CEO,

Eugene W. Baldino.  (App. Br. at 4.)  Notably, the Bankruptcy Court found that Mr. Baldino's

declaration contained statements that were "not based on personal knowledge."  (Decision at 13;

R. 26.)  Moreover, while Mr. Baldino's Declaration contains numerous conclusory allegations

and improper opinions, the Bankruptcy Court found that Jasco had presented "no evidence

connecting Dana to the alleged conspiracy" with Nationwide. (Decision at 12; R. 25) (emphasis added).

The facts as found by the Bankruptcy Court are as follows:

On July 21, 1995, Jasco and Eaton Corporation entered into a purchase agreement (the "Agreement") wherein Jasco supplied precision-machined castings to Eaton Corporation. (Decision at 1; R. 14, 111-20.)  On or about December 31, 1997, Dana acquired this portion of Eaton Corporation's business, among others, making Dana the successor-in-interest to Eaton Corporation under the Agreement.  (Decision at 1, n. 1; R. 14, 113.)  Section 4.01 of the Agreement contained the following term and termination provision:  "The Agreement shall remain in effect until December 31, 2000.  The parties agree to meet in the second quarter of the year 1999 to negotiate an extension of the term." (Decision at 2; R. 15, 113.)  The parties did not meet in the second quarter of 1999.  (Decision at 2; R. 15, 315.)  Instead, Dana sent Jasco a letter in September 1999 attempting to schedule a meeting to discuss an extension of the Agreement. (Decision at 2; R. 15, 124-28, 157.)  Jasco prepared a proposal for an extension of the contract, and the parties met on December 3, 1999.  (Decision at 2; R. 15, 128, 194.)  Jasco's proposal provided for a price increase over the term of any renewed agreement.  (Decision at 2; R. 15, 140-41, 145-51, 198-202, 224-29.)  Dana rejected Jasco's proposal, and the Agreement expired by its terms the following year.  (Id.)

Before the Agreement expired, Dana considered bids from several alternative suppliers, including Nationwide.  (Decision at 2; R. 15, 161-97, 220-23, 293-307.)  Dana sought bids from alternative suppliers in an attempt to obtain lower prices.  (Decision at 2, and at n. 2; R. 15, 220-23, 293-307.)  In addition, Jasco was one of Dana's worst suppliers in terms of product nonconformity.  (Decision at 2, and at n. 2; R. 15, 137, 155, 160, 200, 208-19, 276-77, 313-14,

316.)  Nationwide submitted its proposal in November 1999.  (Decision at 2; R. 15, 142-44, 161-97, 206-7.)  Nationwide's proposal offered prices that were 10% less than the prices being charged by Jasco at that time.  (Decision at 2; R. 15, 151-55, 308-12.)  Nationwide also offered the potential for higher quality through the use of new machinery, which Nationwide agreed to acquire at a cost of $6 million to $10 million once it received the contract with Dana.  (Decision at 2, n. 2; R. 15, 151-55, 230, 233-34.)  Thus, when the Agreement expired, Nationwide became Dana's new supplier for these parts.  (Decision at 2; R. 15, 203-5.)

Jasco's key personnel responsible for serving Dana under the Agreement included Jasco's president, Gary Rogers; Charles Zicari, a business manager; and Sean Convertino, a senior engineer.  (Decision at 2; R. 15, 76, 374.)  In May 1999, Mr. Rogers left Jasco to pursue other business interests.  (Decision at 2; R. 15, 285-90, 374.)  Mr. Zicari and Mr. Convertino left Jasco at the end of June 1999 with the hopes of starting their own business.  (R. 237-38, 254-70.)  When Mr. Convertino left Jasco to join Mr. Zicari's business, he retained certain information from Jasco on his personal computer such as machining cycle times, pricing information and a list of machines required for performance under the Agreement.  (Decision at 2; R. 15, 278, 280.)  Mr. Zicari's business was not expected to compete with Jasco for Dana's business.  (R. 239-50, 279-80, 329.)

When the plans for Mr. Zicari's business fell through, both Mr. Zicari and Mr. Convertino went to work for Nationwide.  (Decision at 2; R. 15, 273, 329.)  In their new positions, Mr. Zicari helped solicit Dana's business and Mr. Convertino helped prepare Nationwide's proposal.  (Decision at 2-3; R. 15-16, 161-97, 281-82.)  At no time was Dana aware that Nationwide may have used any information retained by Mr. Convertino.  (R. 281-82.)

On July 31, 2002, Jasco commenced an action against Dana, Nationwide and Messrs. Rogers, Zicari and Convertino in the State Court (the "Lawsuit"). (Decision at 3; R. 16, 97-104.) Jasco asserted causes of action against Dana for breach of contract, trade secret misappropriation, unjust enrichment and *prima facie* tort. (Id.) Through the Lawsuit, Jasco claims that Dana engaged in a conspiracy with Messrs. Convertino, Rogers, and Zicari to divert the contract from Jasco to its competitor, Nationwide, through the use of stolen trade secrets. (Id.)

The parties conducted discovery for nearly four years before Dana filed its petition for bankruptcy. (Decision at 3; R. 16, 71.) During that time, Jasco conducted 18 depositions, including the depositions of three Dana employees over a five-day period. (Decision at 8; R. 21.) The Lawsuit has been stayed as to Dana since the Petition Date, but Jasco and the remaining defendants continued to conduct depositions. (Decision at 3; R. 16.) Jasco ultimately settled with Nationwide and Messrs. Zicari and Convertino. (Decision at 3; R. 16.) The State Court severed Jasco's claim against Mr. Rogers from Jasco's claim against Dana. (Decision at 3; R. 16.)

## ARGUMENT

Jasco does not address each of its thirteen appellate issues separately, but, instead, raises five broad "points." Accordingly, Dana addresses each of Jasco's "points" in the order presented in Appellant's Brief. For the reasons set forth below, the appeal should be denied.

### A.     The Bankruptcy Court Acted Properly By Treating The Objection as a Motion for Summary Judgment.

Jasco's argument that the Debtors and the Bankruptcy Court impermissibly "converted" the Objection into a motion for summary judgment is without merit. Dana's Objection expressly requested dispositive relief, citing both Rule 56 of the Federal Rules of Civil Procedure (the

"Federal Rules") and Rule 7056 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") as legal authority for disallowing the Jasco Claim, as well as section 502 of the Bankruptcy Code.  (R. 73-74, 89, 91.)  Specifically, the Objection requested the Bankruptcy Court to expunge Jasco's proof of claim because Dana was entitled to summary judgment, and because Jasco was unable to show the existence of a genuine issue as to any material fact.  (R. 64, 69.)  In total, Dana's Objection cited Federal Rule 56 and Bankruptcy Rule 7056 or mentioned the legal standard for summary judgment more than 35 times in the Notice and Objection.  (R. 64, 69-71, 73-74, 79-80, 83-84, 87-91.)

Jasco's opposition to Dana's Objection expressly characterized Dana's Objection as a "motion for summary judgment."  (R. 362.)  Its opposition also gave a recitation of the "standard applicable to summary judgment," arguing that "Dana is not entitled to summary judgment." (R. 362.)  Jasco also asserted that the Bankruptcy Court could not sustain Dana's Objection "as long as any one cause of action survives Dana's summary judgment motion." (R. 362.) Accordingly, this evidence shows that Jasco and its attorney knew from the outset that Dana's application sought summary judgment and contradicts Jasco's claim of a prejudicial "bait and switch."

Jasco's treatment of Dana's Objection as a motion for summary judgment also belies its assertion that Jasco's counsel first learned of Dana's intention to "convert" the Objection into a motion for summary judgment during the meet-and-confer conference on September 29, 2007. (See App. Br. at 18.)  Even so, Jasco's counsel submitted a lengthy letter to Judge Lifland on October 15, 2007, objecting to the handling of Dana's Objection as a motion for summary judgment and requesting a briefing schedule.  (R. 547-51.)  Although the Bankruptcy Court felt that the parties had extensively briefed the summary judgment issues in an "enormous set of

papers," Judge Lifland granted Mr. Geiger's request for more time to make any additional submissions that Jasco deemed necessary.  (R. 648-9.)  The Bankruptcy Court also directed the parties to submit Local Bankruptcy Rule 7056-1 Statements.  (R. 645, 648-49.)

After receiving the requested time to make additional submissions in opposition to Dana's Objection as a motion for summary judgment, Jasco failed to do so.  Jasco served a Local Bankruptcy Rule 7056-1 Statement, essentially summarizing the evidence and arguments that Jasco already made in opposition to Dana's Objection and denying Dana's factual allegations in their entirety.  (R. 660-67.)  Jasco also served a motion for a mandatory abstention and to lift the automatic stay.  (R. 668-82.)  *Jasco failed, however, to serve any supplemental or amended papers opposing Dana's Objection as a motion for summary judgment.*

Accordingly, Judge Lifland properly treated Dana's Objection as a motion for summary judgment and, as stated below, did not prejudice Jasco or deprive it of its Due Process rights.

**B.      The Bankruptcy Court Did Not Deprive Jasco of Its Right to Due Process.**

Jasco should not be heard to complain of any prejudice as a result of the manner in which Judge Lifland handled Dana's Objection.  As stated above, Dana's Objection sought dispositive relief from the outset, and Jasco treated the Objection as a motion for summary judgment in its response.  Nevertheless, Jasco's counsel objected to handling the Objection as a motion for summary judgment and requested a briefing schedule to make additional submissions.  Even though Judge Lifland granted Jasco's request, Jasco did not amend or supplement its opposition papers.  As such, Jasco did not suffer any prejudice as a result of the handling of Dana's Objection.

Moreover, the Bankruptcy Court did not violate Jasco's Due Process rights by directing the parties to serve Local Bankruptcy Rule 7056-1 Statements at the same time.  Local Bankruptcy Rule 7056-1 provides for a statement of material facts as to which the moving party

contends there is no genuine issue.  The Local Bankruptcy Rule also provides the party opposing a motion for summary judgment an opportunity to submit a responding statement of material facts.  Neither Federal Rule 56 nor Bankruptcy Rule 7056 requires the equivalent of a Local Bankruptcy Rule 7056-1 Statement.  Considering that neither the Federal Rules nor the Bankruptcy Rules require the same procedure, Jasco's assertion of a Due Process right to serve a response to Dana's Local Bankruptcy Rule 7056-1 Statement is entirely without merit.[4]  Even so, the Court could not consider any of Dana's factual allegations as admitted because Jasco's Local Bankruptcy Rule 7056-1 Statement denied Dana's statement of material facts in its entirety.  (R. 660.)

Furthermore, in its initial Objection, Dana included a statement of "Material Undisputed Facts of the Jasco Claim."  (R. 75-79, 504-20, 652-59.)  Not only did this statement in the Objection substantially comply with Local Bankruptcy Rule 7056-1, it completely undermines Jasco's complaints of prejudice.  Paragraphs 2-6, 8-9, 13-17, and 19-25 of Dana's Local Bankruptcy Rule 7056-1 Statement were taken verbatim from statements in Dana's Objection.  (R. 75-79, 652-59.)  Paragraphs 32-39 were also identical to statements in Dana's Reply.  (R. 504-20, 652-59.)  Paragraphs 7, 10-12, 18, 26, 28, 30-31, and 40 either summarize or are nearly identical to assertions in Dana's Objection and Reply.  (R. 75-79, 504-20, 652-59.)  As such, Jasco already responded to Dana's Local Bankruptcy Rule 7056-1 Statement when it served its Response to Dana's Objection.

Accordingly, Jasco was not prejudiced and the Court did not deprive Jasco of any Due Process rights in connection with the handling of Dana's Objection.

---

[4] Additionally, because Dana was proceeding via an Objection to a proof of claim (which nevertheless could be resolved on a summary judgment basis), it is far from clear that Local Bankruptcy Rule 7056-1, which technically applies to Adversary Proceedings, would even apply here.

**C.    The Bankruptcy Court Properly Determined That No Further Discovery Was Needed.**

1.    The Bankruptcy Court Did Not Abuse Its Discretion in Denying Jasco's Demand for Additional Discovery.

This Court should uphold the Bankruptcy Court's decision not to permit additional discovery under Federal Rule 56(f) because the Bankruptcy Court did not abuse its discretion. See Martin, 225 B.R. at 286 (reviewing for abuse of discretion a bankruptcy court's denial of further discovery); S. N. Phelps & Co. v. The Circle K Corp. (In re The Circle K Corp.), Nos. 96 Civ. 5801 (JFK) and 96 Civ. 6479 (JFK), 1997 WL 31197, at * 8 (Bankr. S.D.N.Y. Jan. 28, 1997) (equating appeals court review of district court discovery decisions with district court review of bankruptcy court decisions for abuse of discretion); In re CIS Corp., No. 91 Civ. 6075 (LJF), 1991 WL 253777, at *2 (Bankr. S.D.N.Y. Nov. 19, 1991) (explaining that a bankruptcy court's "decision to grant summary judgment is subject to *de novo* review . . . . However, the . . . decision not to permit additional discovery may be reversed only upon a finding of abuse of discretion.").

Abuse of discretion is a deferential standard.  When a lower court is vested with discretion as to a matter, the lower court is "not required by law to make a *particular* decision. Rather, the [lower] court is empowered to make a decision—of *its* choosing—that falls within a range of permissible decisions." Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 169 (2d Cir. 2001).

Jasco makes no showing that the Bankruptcy Court abused its discretion.  Indeed, Jasco does not even address the correct standard of review for the Bankruptcy Court's decision that no further discovery was necessary.  (See App. Br. at 16, 20-21.)  Instead, offering no support for its statement, Jasco accuses the Bankruptcy Court of ruling without considering Jasco's professed need for additional discovery.  (See App. Br. at 20.)

The Bankruptcy Court appropriately exercised its discretion when it found that Jasco's continuing requests for discovery at this stage were meritless. (See Decision at 9.) The Bankruptcy Court based its conclusion on the fact that "before the [Lawsuit] was stayed, Jasco had nearly four years to conduct discovery. The discovery efforts included 18 depositions, some lasting for several days. Among them Jasco deposed three Dana employees, taking five days to do so." (Id. at 8.) The Bankruptcy Court further noted that Dana had responded to interrogatories and two notices to produce by providing Jasco with "voluminous documentation." (Id.) Based on the extraordinary amount of discovery already taken in the State Court case, the Bankruptcy Court exercised proper discretion in precluding further discovery.

Moreover, given the unreasonable nature of the requested discovery, the Bankruptcy Court acted well within the limits of its broad discretion. Far from being "narrowly" drawn, as Jasco claims, the Third Notice to Produce seeks an extraordinary volume of documents and is abusive in scope. (R. 498-99.) For example, the Third Notice to Produce would have required Dana, a corporation with more than 45,000 employees operating in nearly 30 countries, to produce all of its telephone records for a seven-year period. (R. 350, 353, 499.) Jasco also claimed to need depositions of "one or two additional Dana employees," but failed to identify the individuals it wished to depose or explain how these depositions would impact the material legal issues in this case. (App. Br. at 20.)

Rather than address why it could not obtain the facts needed to make its case after four years of discovery and eighteen depositions, Jasco instead focuses on the Bankruptcy Court's decision to employ language used by the State Court in denying Jasco additional discovery against Mr. Rogers in another action. Jasco correctly points out that that decision was remanded for further discovery, but makes no showing of how a side reference to another law suit

overcomes the Bankruptcy Court's reasoned and appropriate exercise of <u>its</u> discretion in <u>this</u> proceeding.  (<u>See</u> App. Br. at 20.)  Thus, Jasco fails to prove that the Bankruptcy Court abused its discretion.

2.    Jasco Waived Its Right to Object to the Bankruptcy Court's Decision Not to Permit Further Discovery Because Jasco Failed to File the Required Rule 56(f) Affidavit.

Federal Rule 56(f) requires the opponent of a motion for summary judgment to file an affidavit (a "<u>Rule 56(f) Affidavit</u>") to support its claims for additional discovery.  <u>See</u> <u>Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Stroh Cos.</u>, 265 F.3d 97, 117 (2d Cir. 2001).  To succeed, a Rule 56(f) Affidavit must explain "the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." <u>Paddington Partners v. Bouchard</u>, 34 F.3d 1132, 1138 (2d Cir. 1994).  Jasco did not do this.

Because Jasco failed to file a Rule 56(f) Affidavit, it waived its right to claim that summary judgment was improperly granted on the ground that discovery was incomplete.  <u>See</u>, <u>e.g.</u>, <u>N.B.C. v. Rockefeller Ctr. Props.</u>, 266 B.R. 52, 61 (Bankr. S.D.N.Y. 2001) (on appeal from bankruptcy court's grant of summary judgment, rejecting nonmovant's claim that additional discovery was needed because nonmovant failed to file a Rule 56(f) Affidavit); <u>Murphy v. IBM Corp.</u>, 23 F.3d 719, 721-22 (2d Cir. 1994) (rejecting appellant's claim that additional discovery was necessary and finding no abuse of discretion by the lower court solely on the ground that appellant did not file a Rule 56(f) Affidavit).

The absence of such an affidavit alone provides grounds to affirm the Bankruptcy Court's Decision.  <u>Konikoff v. Prudential Ins. Co. of America</u>, 234 F.3d 92, 97-98 (2d Cir. 2000) (<u>quoting</u> <u>Shumway v. UPS, Inc.</u>, 118 F.3d 60, 63 (2d Cir. 1997)) ("While we may, of course, affirm on the same grounds relied on by the [lower] court if the record permits, '[i]t is beyond

cavil that an appellate court may affirm the judgment of the [lower] court on any ground appearing in the record.'"); see also In re Sugarhouse Realty, Inc., 192 B.R. 355, 361, n.11 (Bankr. E.D. Pa. 1996) (stating that a district court can affirm a correct decision of a bankruptcy court on grounds different to those relied on by the bankruptcy court).

Moreover, Second Circuit courts require strict adherence to the Rule 56(f) Affidavit requirement. Details of additional discovery requests in briefs, memoranda and other filings cannot replace a missing Rule 56(f) Affidavit. See N.B.C., 266 B.R. at 61 (holding that, even where all of the information required by Federal Rule 56(f) can be found in other affidavits and filings, the failure to file a Rule 56(f) Affidavit is "by itself enough to reject a claim that the opportunity for discovery was inadequate") (quoting Burlington Coat Factory Warehouse Corp. v. Esprit de Corp., 769 F.2d 919, 926 (2d Cir. 1985)). Thus, Jasco's unverified complaints about an alleged lack of discovery is not proof that the additional request discovery was in fact necessary, and cannot overcome the effect of a missing Rule 56(f) Affidavit.

For the foregoing reasons, this Court should affirm the Bankruptcy Court's decision to deny Jasco further discovery.

**D.    The Bankruptcy Court Properly Determined That Dana Demonstrated a *Prima Facie* Entitlement to Summary Judgment.**

Jasco fails to explain how the lack of an affidavit or declaration from Dana leads to the conclusion that the Bankruptcy Court erred in granting summary judgment to Dana. Instead, Jasco makes the unsupported and conclusory statement that the lack of an affidavit or declaration from Dana means that Dana "did not submit any evidence in admissible form." (App. Br. at 22.) Dana, however, exceeded its burden far beyond a mere affidavit or declaration by submitting, as exhibits to the Objection, ample evidence gleaned during discovery in the Lawsuit — e.g., extensive documentary evidence and sworn testimony captured in numerous deposition excerpts.

These are the same type of supporting exhibits that either party would have submitted with a summary judgment brief in the a federal district court. Thus, these exhibits should be more than sufficient to support the Bankruptcy Court's grant of summary judgment.[5]

Moreover, Jasco fails to identify the particular evidence relied upon by the Bankruptcy Court that should have been deemed inadmissible. This failure is especially significant because many of the Bankruptcy Court's findings relied on exhibits submitted by Jasco. (See, e.g., Decision at 11, and at n. 4.) Without those specific allegations, this Court should ignore Jasco's conclusory assertions and affirm the Decision.

**E.    The Bankruptcy Court Properly Granted Summary Judgment to Dana Because There Were No Genuine Issues of Material Fact.**

  1.    The Bankruptcy Court Properly Held That There Was No Breach of Contract Because The Agreement to Negotiate Is Unenforceable as a Matter of Law.

The Bankruptcy Court properly held that "contractual provisions that make renewal of an agreement subject to future negotiations between the parties are not binding and cannot be enforced." (Decision at 9-10) (citing multiple cases under both Ohio and New York law).[6] Because Section 4.01 of the Agreement only provided that "[t]he parties agree to meet in the

---

[5] Furthermore, Dana acknowledged the approach it took, respectfully maintaining that the supporting exhibits for the Objection were a more than adequate substitution for an affidavit or declaration and expressly requested a waiver of the declaration provision of the Claims Objection Procedures. (See Obj., p. 25, R. 92.)

[6] Specifically, the Bankruptcy Court cited Candid Prods., Inc. v. Int'l Skating Union, 530 F. Supp. 1330, 1336 (S.D.N.Y. 1982) ("[I]n ordinary commercial situations, a mere agreement to agree is unenforceable for indefiniteness where material terms are left open for future negotiation."); Gen. Motors Corp. v. Keener Motors, Inc., 194 F.2d 669, 676 (6th Cir. 1952) ("An agreement must be definite and certain …. If the obligation to become binding rests on some future agreement to be reached by the parties so that either party may refuse to agree, there is no contract."); W.A. Inc. v. Romocean, No. 10358, 1982 WL 4930, at *5-6 (Ohio Ct. App. March 24, 1982) (contractual provisions that make renewal of an agreement subject to future negotiations between the parties are not binding and cannot be enforced); Metromedia, Inc. v. The Greater Cleveland Regional Transit Auth., No. 39743, 1979 Ohio App. LEXIS 11970, at *17 (Ohio Ct. App. Jan. 11, 1979) (a provision whereby a party covenanted and agreed to negotiate as to the terms and conditions and consideration of said extension or term deemed unenforceable); Royce Haulage Corp. v. Bronx Terminal Garage, Inc., 57 N.Y.S.2d 760 (App. Term Sup. Ct. 1945) ("A promise to negotiate at a future time is not a contract; such a promise means no more than a contemplated discussion in arranging the terms of a contemplated contract."). Furthermore, the Bankruptcy Court noted, "The parties agree that section 9.06 of the Agreement provides that it is governed by Ohio law which is no different than the applicable New York law here." (Decision at 9 n.1, R. 22.)

second quarter of the year 1999 to negotiate an extension of the term," that provision is unenforceable against either Dana or Jasco.  Accordingly, no breach of contract could have occurred based on this section of the Agreement because that section cannot be enforced as a matter of law.

Jasco makes no attempt whatsoever to address the well-settled case law relied on by the Bankruptcy Court.  Instead, Jasco reiterates the same cases on the implied covenant of good faith and fair dealing that it cited before the Bankruptcy Court.  None of these case are applicable to, or even address, a renewal provision like Section 4.01.  Moreover, May Metropolitan Corp. v. May Oil Burner Corp., 290 N.Y. 260 (1943), the case that Jasco primarily relies on to save its contract claim, is unavailing.  May concerned a contract provision that afforded one party the right to "automatically" renew a supply contract "from year to year," provided that the parties agreed on a quota for the new year.  Id. at 265.  The May parties had exercised that automatic renewal provision for eight successive years before the dispute arose.  Id. at 262.  This "long series of writings and long course of dealings" compelled the court to determine that a jury question existed as to whether a reasonable standard had emerged between the parties to determine the yearly quota.  Id. at 265.  These facts do not exist in the present dispute between Jasco and Dana.

For one, there was no history of renewals between Dana and Jasco and Section 4.01 does not make renewal automatic.  Moreover, Jasco freely admits that the parties never came close to agreement on the price term because Jasco wanted to increase its prices while Dana wanted to decrease the prices.  (See App. Br. at 8.)  Thus, the Agreement between Dana and Jasco falls into the other category illustrated by the court in May:  "[i]f the contract contains, as to some material term, an 'agreement to agree' and it fairly appears that what the parties intended was that the

treaty should be binding only if the parties did thereafter in fact arrive at a mutually satisfactory agreement as to that term, then unless and until they arrive at that point, there is no contract." Id. at 264.  Section 4.01 of the Agreement only contemplates the possibility of renewal, subject to the parties negotiating a new, long-term agreement.  Where, as here, "the obligation to become binding rests on [some] future agreement to be reached by the parties, so that either party may refuse to agree, there is no contract." Gen. Motors Corp., 194 F.2d at 676 (applying Ohio law).

Instead of responding to the Bankruptcy Court's conclusion that no enforceable contract existed for Dana to breach, Jasco reiterates its erroneous theory that Dana's alleged failure to negotiate with Jasco in good faith for an extension of the Agreement constituted a breach of the Agreement.  (See App. Br. at 22-23.)  Stated simply, Jasco contends that, regardless of the outcome of those negotiations, Dana must pay Jasco $20,000,000.00 if Jasco can present evidence that Dana did not negotiate with Jasco in good faith.  Id.  That argument fails as a matter of law.

"The obligation to negotiate in 'good faith' does not change the enforceability of a renewal clause premised on future negotiations between the parties."  (Decision at 10) (citing Necchi S.p.A. v. Necchi Sewing Mach. Sales Corp., 348 F.2d 693, 698 (2d Cir. 1965)).  In Necchi, the parties' contract required them to meet to discuss renewal six months before the contract terminated.  348 F.2d at 698.  The parties never met, causing the plaintiff to seek damages against the defendant for failure to negotiate in good faith.  Id.  In determining that the conduct did not give rise to an arbitrable dispute, the Second Circuit concluded that, regardless of whether Necchi's action were in good faith, it could not write a renewal contract for the parties or determine damages:

> This [provision] … does not impose an obligation on Necchi to grant a renewal of the distributorship and it is impossible to say what relief would be appropriate if

Necchi failed to examine the possibility of a renewal. Certainly we cannot ask that a renewal contract be written for the parties, as it is altogether too conjectural that the parties would have agreed and on what terms. It is impossible to assess any damages, as there is no way that anyone could foresee what would have come from examining the possibility of executing a new contract, *even if this were done in the utmost good faith.*"

Id. (emphasis added.)

Because the exact same situation exists between Dana and Jasco, the Bankruptcy Court reached the same conclusion as the Second Circuit did in Necchi. Furthermore, the Bankruptcy Court found that "Jasco's further argument that Dana did not negotiate in good faith because it met with an alternative supplier prior to the negotiations with Jasco is meritless." (Decision at 11.) "Nothing in Section 4.01 required Dana to negotiate exclusively with Jasco or forbade Dana from seeking bids from other potential suppliers before discussing a potential renewal with Jasco." Id. The Bankruptcy Court also noted that Jasco's own exhibits showed that Dana appropriately used the market information it gained from negotiating with other suppliers to aid in its negotiations with Jasco. Id.

For these reasons, the Bankruptcy Court properly granted summary judgment on Jasco's contract claim because the renewal provision on which it is premised is unenforceable as a matter of law.

2.    The Bankruptcy Court Properly Granted Summary Judgment to Dana Because, as a Matter of Law, No Conversion Occurred.

Jasco's claim for misappropriation of trade secrets, like all of its tort claims, is predicated on the allegation that Dana conspired with Nationwide to harm Jasco and steal its trade secrets. (R. 100). After nearly four years of discovery, however, Jasco is unable to present evidence showing a genuine issue as to any material fact on its conversion claim. Even if Nationwide improperly obtained Jasco's trade secrets through Messrs. Zicari and Convertino, there is no evidence showing that anyone at Dana ever learned of the alleged misappropriation. Instead,

Jasco relies on speculation and conjecture to infer Dana's participation in an alleged conspiracy to deprive Jasco of its alleged trade secrets. Thus, the Bankruptcy Court properly found that "there is no evidence connecting Dana to the alleged conspiracy" that forms the basis of Jasco's conversion claim. (Decision at 12; R. 25.)

New York courts traditionally base their interpretation of trade secret misappropriation on Restatement (First) of Torts § 757 (1939). See Ashland Mgmt., Inc. v. Janien, 82 N.Y.2d 395, 407, 604 N.Y.S.2d 912, 917 (1993). Under this authority, Jasco must prove the following elements to support a claim that Dana misappropriated Jasco's trade secrets: (1) that Jasco possessed a trade secret; and (2) that Dana is using the trade secret in breach of an agreement, confidence or duty, or as a result of discovery by "improper means." While Dana does not concede that Jasco even has protectable trade secrets, it is Jasco's inability to prove the latter element that dooms its claim as a matter of law. [7]

Jasco's allegation that Dana used "improper means" to obtain Jasco's trade secrets is predicated on the existence of the alleged conspiracy with Nationwide and the former Jasco employees. (R. 324-31.) Jasco argues that Dana's knowledge of Mr. Zicari's and Mr. Convertino's employment at Nationwide and of their participation in Nationwide's bid for the Dana contract evinces Dana's participation in the conspiracy. Jasco also claims that Mr. Zicari's telephone calls to Dana employees at or about the end of his employment at Jasco reflects Dana's knowledge of the misappropriation. Additionally, Jasco infers Dana's role in the alleged misappropriation from its faulty assumption that Nationwide could not perform the Dana contract without the benefit of stolen trade secrets.

---

[7] Dana disputes whether Jasco possessed trade secrets in connection with its performance of the Agreement with Dana. The existence of a trade secret, however, is generally considered a question of fact. As such, for the purposes of this appeal, Dana's arguments relate to the issue of whether it received notice of Messrs. Convertino's and Zicari's alleged wrongful misappropriation of the allegedly protected information.

As stated below, Jasco's speculation and conjecture are incapable of defeating Dana's *prima facie* showing of its entitlement to judgment as a matter of law. See Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (plaintiff's speculation about communications between insurers and underwriters insufficient to defeat motion for summary judgment). This superficial tactic cannot defeat summary judgment. See Opals on Ice Lingerie v. Body Lines Inc., 320 F.3d 362, n.3 (2d Cir. 2003) ("To defeat a summary judgment motion the opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions.") (quoting Contemporary Mission v. United States Postal Serv., 648 F.2d 97, 107 n.14 (2d Cir. 1981)).

### (a)    No evidence exists showing that anyone ever informed Dana of the alleged misappropriation of Jasco's trade secrets.

In addition to not being able to prove that Dana engaged in any misappropriation, Jasco cannot establish that Dana knew that any misappropriation of trade secrets had occurred. A defendant who uses a trade secret in good faith without notice that it was improperly obtained is not liable for misappropriation. See Restatement (First) of Torts § 758 (1939). None of Jasco's allegations in its responses to Dana's interrogatories or any of the extensive deposition testimony prove that Dana had knowledge of any alleged misappropriation or that Nationwide's bid may have been prepared using Jasco's trade secrets.

Jasco failed to cite any testimony in the record to support its accusation that Dana knew of Nationwide's alleged misappropriation because each of the principal witnesses denies knowledge of anyone ever telling Dana of the alleged conversion. Mr. Zicari denied ever advising Dana that "anyone from Nationwide was using stolen information from Jasco to put together the bid that Nationwide ultimately presented." (R. 524-25.) Mr. Convertino also denied ever telling anyone at Dana that Nationwide prepared its bid using stolen information from

Jasco.  (R. 281-82.)  Mr. Haybach from Dana also testified that no one ever informed him of the use of stolen information in Nationwide's bid.  (R. 231-32.)

> **(b)    Jasco's inference that Dana knew of the misappropriation from Nationwide's PowerPoint presentation is pure speculation.**

Mr. Baldino's affidavit claims that Nationwide "bragged to Dana about the extent of the information they had stolen from Jasco."  (R. 384.)  According to Mr. Baldino, "Nationwide specifically discussed with Dana the technical information … stolen from Jasco."  (Id.)  As the Bankruptcy Court concluded, however, Mr. Baldino has no personal knowledge of what Nationwide and Dana discussed at the November 10, 1999 meeting because he was not there.  (Decision at 12; R. 25, 383.)  Mr. Baldino does not support these allegations with any evidence or testimony from participants in the meeting.  (R. 384.)

As a result, Mr. Baldino can only speculate about Nationwide's representations to Dana based on a PowerPoint presentation from the November 10, 1999 meeting.  The presentation stated that employees who were "intimately knowledgeable with this program," Messrs. Convertino and Zicari, had become employed by Nationwide.  (R. 410-26.)  The presentation also stated that Messrs. Convertino and Zicari helped prepare Nationwide's estimates of machining cycles based on their "past experience with the program."  (R. 410-26.)  Nothing in the PowerPoint presentation can be interpreted as "bragging" about "stolen information."  Nor is there any reference to stolen "technical information."

As the Bankruptcy Court noted, the "fact that Dana knew that Messrs. Zicari and Convertino were now Nationwide employees is not probative of a conspiracy or proof of trade secret misappropriation."  (Decision at 12-13; R. 25-26.)  Rather, the Bankruptcy Court concluded that "Nationwide's communication that it employed individuals who have worked with Dana and know Dana's business is conduct consistent with permissible competition."

(Decision at 13; R. 26) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 597 and n.21 (1986) (conduct that is as consistent with permissible competition as with illegal conspiracy does not, without more, support even an inference of conspiracy" and cannot suffice to create a genuine issue for trial)).  Jasco makes no attempt to address the Bankruptcy Court's reasoning or legal authority in this appeal.

Furthermore, the Bankruptcy Court correctly found that there was no reason for Dana to assume that Messrs. Zicari and Convertino illegally misappropriated Jasco's alleged trade secrets simply because they were now employed by a competitor.  Absent any wrongdoing, an employee's mere knowledge of the intricacies of a business is not protected as a trade secret. (Decision at 13; R. 26) (citing Marietta Corp. v. Fairhurst, 301 A.D.2d 734, 739, 754 N.Y.S.2d 62 (3d Dept. 2003); Reed Roberts Assoc. v. Strauman, 40 N.Y.2d 303, 307-09, 386 N.Y.S.2d 677 (1976) (absent wrongdoing, an employee is not prohibited from utilizing his or her knowledge and talents in an area of expertise or the business methods and processes known to the particular trade)).

      **(c)**      **Jasco impermissibly infers evidence of a conspiracy from telephone records without any evidence about the subject of the calls.**

Jasco cites telephone records reflecting calls between Messrs. Convertino, Rogers, Zicari and Dana employees, Bob Buss and Adam Haybach, as evidence of an alleged conspiracy to steal Jasco's trade secrets.  Mr. Zicari's telephone calls to Dana employees at or about the time of his departure from Jasco are entirely unremarkable considering his relationship with Dana while working at Jasco.  In fact, as Mr. Zicari testified that these calls concerned the business he planned to start in Kentucky, they cannot be construed as implicating Dana in the alleged conspiracy.  (R. 251-53, 271-72.)  Jasco has no evidence that these calls concerned any acts in furtherance of any alleged conspiracy or the transmittal of any trade secrets.

Jasco also argues that the Dana employees' inability to recall the subject of these calls (during depositions taken more than five years after-the-fact) constitutes evidence of the alleged conspiracy. (R. 385-86.) Jasco asks this Court to infer a conspiracy not from affirmative evidence, but from the total absence of evidence of what transpired during these calls. Further, this absence of evidence cannot support Jasco's baseless allegations of perjury against Dana's witnesses. Jasco's reliance on the telephone calls, therefore, is too speculative to support reasonable inferences giving rise to a question of fact requiring trial.

Moreover, Jasco's inferences are improper as a matter of law. As indicated in <u>Goetzke v. Ferro Corp.</u>, a case relied on by the Bankruptcy Court, yet ignored by Jasco, "to assert that the [repeated] calls are evidence of a conspiracy is simply speculation." 280 F.3d 766, 778 (7th Cir. 2002) (granting summary judgment on conspiracy claim where the plaintiff's "proof" of conspiracy consisted of "numerous calls" between the defendants over a nine-month period). Accordingly, the Bankruptcy Court properly concluded evidence of telephone calls is not probative of a conspiracy or wrongdoing, and therefore cannot defeat summary judgment. (Decision at 13; R. 26.)

> **(d)    It cannot reasonably be inferred from Nationwide's ten-percent price reduction that Dana knew of or participated in a scheme to misappropriate Jasco's trade secrets.**

Jasco cites Nationwide's ability to undercut Jasco's prices by 10% as evidence of Dana's alleged wrongdoing. (R. 376-77, 379.) Nationwide's quoted price reduction evinces misappropriation, Jasco reasons, because Nationwide could not have offered a 10% price reduction unless it had misappropriated Jasco's trade secrets. Jasco thus infers that Dana knew that Nationwide could not perform the contract at the quoted price unless it had stolen Jasco's trade secrets. This inference is unsupportable.

While Jasco presumes that it would have been impossible for Nationwide to perform the contract at its quoted prices without the benefit of stolen trade secrets, it offers no facts or evidence to support this theory. To the contrary, the evidence in the record disproves this assumption. For example, Nationwide's president, Ronald Ricotta, testified that Nationwide could offer a 10% price cut without the benefit of allegedly stolen information. (R. 543-46.) He explained that a multi-million dollar investment in new equipment, increased machine productivity, company practice and industry expectations enabled Nationwide's quoted price to Dana. (Id.)

As such, Jasco's argument ignores the legitimate explanations for Nationwide's quoted price. Jasco can only speculate about what factors enabled Nationwide to provide a more attractive bid. That is insufficient as a matter of law.

      (e)      **Jasco otherwise failed to present facts sufficient to raise a "genuine issue" for trial.**

Jasco's remaining arguments similarly fail to justify reversing Judge Lifland's Decision. Jasco argues that Paul Blanchard, a Dana employee, lied in his affidavit, in which asserted that he "had no further dealings with [Messrs. Convertino and Zicari] concerning the contract negotiations with Jasco after they left Jasco." (R. 382.) Without any reference to supporting evidence or testimony, Mr. Baldino claims that Mr. Blanchard met with Messrs. Zicari and Convertino for dinner the evening before Nationwide's presentation to Dana, attended the presentation, and "probably" toured Nationwide's facilities. Yet neither Mr. Blanchard's participation in these events nor Jasco's allegation that Mr. Blanchard lied about participating in these events is material or probative of Jasco's claim.

The mere fact that Mr. Blanchard may have met with Messrs. Convertino or Zicari before or during Nationwide's presentation to Dana, or during Nationwide's other efforts, cannot give

rise to a reasonable inference that during these meetings, the parties actively conspired to misappropriate Jasco's trade secrets.  To the contrary, it is pure speculation to assume such conspiratorial acts took place.  Similarly, Jasco's accusations about Mr. Blanchard's veracity, accusations that Dana vigorously disputes, are similarly immaterial because they do not impact the outcome of a *prima facie* element of Jasco's claim against Dana.

3.    The Bankruptcy Court Properly Found That, As a Matter of Law, Dana Was Not Unjustly Enriched.

As explained in the previous section, "Jasco cannot prove that Dana engaged in any misappropriation or conversion."  (Decision at 15.)  The Bankruptcy Court correctly held that, "where a claim for unjust enrichment is premised on a defendant's misappropriation of trade secrets, the unjust enrichment claim necessarily fails when the plaintiff cannot establish the defendant's misappropriation."  (Id.) (citing Cross Media Mktg. Corp. v. CAB Mktg., Inc., 367 B.R. 435, 459 (Bankr. S.D.N.Y. 2007)).  Jasco's appellate brief fails to rebut or even address this conclusion.

Instead, Jasco contends that Dana was unjustly enriched based solely on the fact that Dana was able to purchase its parts from Nationwide at a lower price than what Jasco desired to charge.  See App. Br. at 29.  That argument fails as a matter of law.

4.    The Bankruptcy Court Properly Found That Jasco Failed to Present Any Facts to Support a Claim for *Prima Facie* Tort.

"To recover for *prima facie* tort the plaintiff must demonstrate (1) intentional infliction of harm (2) causing special damages (3) without excuse or justification (4) by an act or acts that otherwise would be lawful."  (Decision at 14) (citing Sigmon v. Parker Chapin Flattau & Klimpl, 901 F. Supp. 667, 680 (S.D.N.Y. 1995); Friehofer v. Hearst Corp., 65 N.Y.2d 135, 142-43, 490 N.Y.S.2d 735 (1985)).  "[T]o satisfy the third element, the plaintiff must allege and prove that the conduct complained of was done with the sole intent to harm."  (Id.) (citing Liberty Mut. Ins.

Co. v. York Hunter, Inc., 945 F. Supp. 742, 749 (S.D.N.Y. 1996)).  "Motives such as profit, self-interest, or business advantage will defeat *prima facie* tort claim" as a matter of law.  Sigmon, 901 F. Supp. at 680.

Because neither party disputes the legal standard, the Bankruptcy Court's decision focuses on Jasco's factual support for this claim.  The Bankruptcy Court specifically found that "Jasco has no probative evidence that Dana conspired with Nationwide to harm Jasco." (Decision at 14.)  The Bankruptcy Court also found that "Dana made an economic decision to choose Nationwide over Dana."  (Id.)  Thus, Jasco failed to prove that Dana's actions were done with the sole intent to harm Jasco.  (Id.)

Moreover, the Bankruptcy Court found that "Jasco cannot prove special damages" as required to recover on a *prima facie* tort.  (Id.)  Because Jasco's alleged damages for *prima facie* tort equal the amount alleged for breach of contract, the claim for *prima facie* tort is barred as duplicative.  (Id.) (citing Maxus Leasing Group, Inc. v. Kobelco Am., Inc., No. 5:04-CIV-518 (FJS/DEP), 2007 U.S. Dist. LEXIS 13312, at *14 (N.D.N.Y. Feb 26, 2007) ("When the identical contractual benefit of the bargain recovery is sought, the tort action is barred as duplicative.") (citations omitted)).  Thus, after almost four years in discovery, Jasco cannot present any facts that support this claim.

In Appellant's Brief, Jasco fails to address the Bankruptcy Court's findings of fact or conclusions of law.  Instead, Jasco states in conclusory fashion, without factual citations in support, that it has "demonstrated its entitlement to a judgment against Dana for *prima facie* tort."  (App. Br. at 30.)  That is not enough to show that the Bankruptcy Court's findings of fact were in clear error.

## <u>CONCLUSION</u>

WHEREFORE, Appellee respectfully requests that the Court:  (a) enter an Order

affirming the Bankruptcy Court's Decision for the reasons set forth therein and in this Appellee's

Brief; and (b) grant such other and further relief as this Court may deem proper.

Dated:    January 14, 2008                    Respectfully submitted,


/s/  Corinne Ball
William G. Gandy  (WG 9518)
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
8444 Westpark Drive – Suite 510
McLean, Virginia  22102
Telephone:  (703) 245-9300
Facsimile:  (703) 245-9301

Corinne Ball (CB 8203)
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

Jeffrey B. Ellman (JE 5638)
Joseph E. Finley (JF 0270)
JONES DAY
1420 Peachtree Street, N.E. - Suite 800
Atlanta, Georgia  30309 3053
Telephone:  (404) 521-3939
Facsimile:  (404) 581-8330

Attorneys for Appellee
Dana Corporation