UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

In re

DANA CORPORATION,

                        Debtor-Respondent,

   and                                     Case No. 07-cv-11144 (RMB)

JASCO TOOLS, INC.,

                        Claimant-Appellant.
_____


## REPLY BRIEF OF APPELLANT JASCO TOOLS, INC.


Alexander Geiger, Esq. (AG-8974)
GEIGER and ROTHENBERG, LLP
45 Exchange Street, Suite 800
Rochester, NY  14614
Tel.:  (585) 232-1946
Fax.:  (585) 232-4746
Alexander Geiger (AG 8974)

*Attorneys for Claimant-Appellant Jasco Tools, Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT

Point I:  Both Dana and the Bankruptcy Court Applied a Double Standard in Evaluating Dana's and Jasco's Respective Submissions Below ............................................1

Point II:  Jasco Demonstrated its Need for Additional Discovery..............................................4

Point III:  Dana Failed to Make Out a *Prima Facie* Entitlement to Summary Judgment ...................................................................................................................................7

Point IV:  The Bankruptcy Court Failed to Draw even the Most Obvious Inferences from the Facts Set Forth in Jasco's Papers................................................................8

      A.  What did Dana Know................................................................................................8

      B.  The Importance of the Nationwide Bid....................................................................9

      C.  Falsus in Uno, Falsus in Omnibus..........................................................................10

CONCLUSION...........................................................................................................................10

## **TABLE OF AUTHORITIES**

Page

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505 (1986) ...................................8

*Beyene v. Coleman Sec. Servs., Inc.,* 854 F.2d 1179 (9th Cir. 1988) ......................................7

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548 (1986) ...............................................7

*Community of Roquefort v. William Faehndrich, Inc.,* 303 F.2d 494 (2d Cir.
    1962) ....................................................................................................................................7

*Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775 (2nd Cir. 2003) ...................................8

*Guerrand-Hermes v. Guerrand-Hermes,* 30 A.D.3d 338, 819 N.Y.S.2d 231
    (1st Dep't, 2006) ...............................................................................................................10

*Jasco Tools, Inc. v. Rogers,* 45 A.D.3d 1296, 844 N.Y.S.2d 810 (4th Dep't,
    Nov. 9, 2007) ..................................................................................................................3, 6

*Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167 (5th Cir.
    1990) ....................................................................................................................................7

*Meloff v. New York Life Ins. Co.*, 51 F.3d 372 (2d Cir. 1995)...................................................7

*Raskin v. Wyatt Co.,* 125 F.3d 55 (2d Cir. 1997) ......................................................................7

*Siewe v. Gonzales,* 480 F.3d 160 (2d Cir. 2007) .....................................................................10

*United States v. United States Gypsum Co.,* 340 U.S. 76, 71 S.Ct. 169
    (1950) ...................................................................................................................................7

*Zhi Wei Pang v. Bureau,* 448 F.3d 102 (2d Cir. 2006).............................................................10

# ARGUMENT

Claimant-Appellant, Jasco Tools, Inc. ("Jasco") submits this Reply Brief in response to the Answering Brief of Debtor-Appellee Dana Corporation ("Dana") and in further support of its instant appeal.

**Point I: Both Dana and the Bankruptcy Court Applied a Double Standard in Evaluating Dana's and Jasco's Respective Submissions Below**

In its Answering Brief, Dana simultaneously claims that: (1) Jasco was not prejudiced by Dana's sleight of hand in transmuting its Objection into a summary judgment motion – after Jasco's time to respond to the Objection had passed – and (2) Jasco's response to Dana's alleged summary judgment motion – which Jasco did not know it was responding to – failed to comply with the requirements of Rule 56.

Specifically, Dana states in its Answering Brief that: "Notably, the Bankruptcy Court found that Mr. Baldino's Declaration contained statements that were 'not based on personal knowledge.'" (Answering Brief, p. 6) That is precisely the crux of the problem. Dana served on Jasco a "Notice of Objection," in which Dana advised Jasco that: "If you file a timely Response, an initial status conference (the "Initial Status Conference") with respect to the Objection will be held on October 17, 2007 at 10:00 am …" (R. 65) This Notice of Objection also advised Jasco that the Response was supposed to contain: "A *concise statement* setting forth the reasons why the Court should not sustain the Objection ..." and "a statement, *on a preliminary basis*, of the nature of any evidence the Claimant anticipates presenting …" (R. 66) (emphasis added).

In addition to this Notice of Objection, Jasco's counsel also reviewed the Bankruptcy Court's Claim Procedures in this case, adopted by Order dated November 9, 2006, which provided that: "No hearing will be initially set on any of the Tier III Objections, and all such Objections will first be set for a status and scheduling conference (the 'Initial Status Conference')." (R. 45)

Based on Dana's Notice of Objection, and based on the Bankruptcy Court's Claim Procedures, Jasco served its Response, which contained exactly what it was supposed to contain; namely, a concise statement, on a preliminary basis, of the evidence that Jasco anticipated

presenting in response to a future summary judgment motion, if and when such a motion was served by Dana, in accordance with a schedule to be set by the Bankruptcy Court at the Initial Status Conference.

The Baldino Declaration was not Jasco's response to Dana's summary judgment motion. There was no summary judgment motion pending. Dana had not served a notice of motion advising Jasco that it was moving for summary judgment; it had not served any papers in support of a summary judgment motion; and it had not served a Rule 56.1 statement. It was clear that Dana was *planning* to bring a summary judgment motion, but in accordance with the procedures adopted by the Bankruptcy Court in this very case, Dana was asking the Bankruptcy Court, at the Initial Status Conference, to set a schedule for the filing of motion papers by both sides. Therefore, in accordance with the procedures adopted by the Bankruptcy Court, Jasco served a Response to advise both Dana and the Bankruptcy Court that: (1) there would in fact be opposition to this Objection and thus Jasco's Claim could not be expunged by default (something that the Claim Procedures obviously anticipated happening in most cases); (2) what Jasco's proof would be once the summary judgment motion was filed by Dana, presented in a concise form, on a preliminary basis only; and (3) asking for a reasonable briefing schedule, in light of the complexity of the issues and the anticipated volume of the motion papers to be served by the parties.

As soon as Jasco's counsel learned of Dana's proposed prestidigitation, during a "meet and confer" conference held ostensibly to allow counsel to agree to a briefing schedule for the anticipated summary judgment motion, Jasco's counsel immediately objected, vehemently and in writing, to the Bankruptcy Court, raising all of the procedural issues that are being raised once again on this appeal. (R. 547–551)

In response to this letter from Jasco's counsel, and in response to oral argument by counsel at the Initial Status Conference, not only did the Bankruptcy Court refuse to grant Jasco a reasonable amount of time to prepare, serve, and file its responsive papers to Dana's newly discovered summary judgment motion, but it also accused Jasco's counsel of stalling (at no time has Jasco ever requested an adjournment or an extension of time in this case) (R. 647), chastised Jasco's counsel for wishing to waste his client's money (by seeking to preserve his client's $20

million claim instead of stipulating to have it expunged) (R. 646), and complained about the "enormous set of papers" submitted by Jasco. (R. 648)

In fact, when dealing with a summary judgment motion in a case of this complexity, and involving $20,000,000 in damages, a response consisting of a 15-page Declaration, a 15-page Response, plus approximately 100 pages of exhibits, is not an "enormous" amount of paper. When Dana's co-defendant, Gary Rogers, moved for summary judgment in New York Supreme Court, which motion resulted in an appeal to the Appellate Division, the Record on Appeal before the Appellate Division consisted on 8173 pages.[1]

The Baldino Declaration (and the Response signed by Jasco's counsel) was exactly what it was supposed to be; namely, a concise statement, on a preliminary basis, of the evidence that Jasco anticipated presenting in opposition to a future summary judgment motion. If Dana, with the assistance of the Bankruptcy Court, had not prevented Jasco from having a meaningful opportunity to oppose Dana's summary judgment motion, then Jasco would have undoubtedly submitted additional declarations in opposition and would have placed before the Bankruptcy Court additional documents and deposition transcripts.[2]

There is a particular irony in having Dana, and the Bankruptcy Court, complain that the Baldino Declaration allegedly contains statements that were "not based on personal knowledge," when Dana submitted absolutely nothing based on personal knowledge. There was literally not one fact submitted by Dana, in proper evidentiary form, before the Bankruptcy Court when that court granted Dana's "summary judgment motion." Dana had not submitted *any* declaration by *anybody*.[3] There was simply an Objection, not verified and not supported by any sworn

---

[1] The appeal resulted in the reversal of summary judgment granted in favor of Gary Rogers by the trial court, and in a finding by the Appellate Division that, "because plaintiff [Jasco] established that discovery has yet to be completed, [New York] Supreme Court erred in granting . . . Rogers summary judgment . . . [citations omitted]. Indeed, plaintiff established that it requires further document discovery and must depose or complete the depositions of additional witnesses. " *Jasco Tools, Inc. v. Rogers*, 45 A.D.3d 1296, 844 N.Y.S.2d 810 (4th Dep't, Nov. 9, 2007).

[2] Dana played the same trick on other litigants in this case. For example, it similarly "converted" an Objection to the Forge Precision Company claim into a summary judgment motion, which the Bankruptcy Court then promptly granted at the "Initial Status Conference." (*See* Bankruptcy Court Order dated 11/28/07, Docket No. 7203) When Forge appealed to the District Court, Dana successfully argued before the Bankruptcy Court that the papers Forge required to oppose Dana's newly discovered summary judgment motion must be excluded from the record on appeal before the District Court. (*See* Bankruptcy Court Order dated 01/09/08, Docket No. 7579)

[3] This violated the Bankruptcy Court's own Claim Procedures adopted in this case. (*See* par. 1(B)(2)(d), R. 44)

statement, submitted by an attorney without any personal knowledge. Somehow this unsworn statement, by an attorney without any personal knowledge, was just fine to support Dana's "summary judgment motion," but the Declaration of the CEO of Jasco, made on personal knowledge, was insufficient to oppose it.

The papers submitted by Jasco included not only a sworn statement by the CEO of Jasco, made on personal knowledge, but also transcripts of sworn deposition testimony and authenticated documents in admissible form. Dana, by contrast, submitted only an unverified, unsworn Objection, signed by a lawyer without any personal knowledge. Yet, the Bankruptcy Court accepted all of the allegations contained in Dana's Objection as gospel truth, while rejecting the facts set forth in the Baldino Declaration as "not based on personal knowledge," and thus insufficient to raise an issue of fact. This decision reflected a double standard by the Bankruptcy Court, it was erroneous, and it must be reversed by this Court.

**Point II: Jasco Demonstrated its Need for Additional Discovery**

In its Answering Brief, Dana claims that: "Because Jasco failed to file a Rule 56(f) Affidavit, it waived its right to claim that summary judgment was improperly granted on the ground that discovery was incomplete." (Answering Brief, p. 15) Of course, had Dana actually served a Rule 56 motion, as opposed to an Objection, it would be on firmer ground in raising this argument.

However, as it happens, Jasco did in fact substantially comply with the requirements of Rule 56(f) in any event. As part of its Response to the Objection, Jasco did submit a sworn statement by Mr. Baldino that: "I understand from our attorney that Dana has stonewalled our discovery demands. At the time of Dana's bankruptcy filing, there was outstanding a document demand directed to Dana in response to which Dana had failed to provide any documents. Given the tendency of Dana employees to lie under oath, as demonstrated by their affidavits, and given their forgetfulness, as demonstrated at their depositions, it is absolutely vital to obtain Dana's paper and electronic records to demonstrate what actually happened." *See* Baldino Declaration, par. 52. (R. 386) Furthermore, Jasco's Response contained an entire section entitled "Additional Discovery is Required in Connection with Jasco's Claim." *See* Response, p. 2-4. (R. 359) In this section, Jasco identified with specificity the additional discovery that was needed (a response

to Jasco's Third Notice to Produce to Defendant Dana, dated December 27, 2005, a copy of which Notice was attached to the Response (R. 490-496)), the precise nature of the documents sought, the reason why these documents were needed, and the reason why discovery had not been obtained (basically, Dana's bankruptcy filing resulted in an automatic stay of all litigation proceedings, including discovery).  (R. 359-361)

Dana also states, in its Answering Brief, that: "Far from being 'narrowly' drawn, as Jasco claims, the Third Notice to Produce seeks an extraordinary volume of documents and is abusive in scope." (Answering Brief, p. 14)  In fact, the pending notice (which was pending at the time Dana filed its bankruptcy petition) contains 15 paragraphs, which seek the following items:  Minutes of Dana staff meetings dealing with the contract that is the subject of the underlying lawsuit; visitor logs showing visits to Dana by employees of specified vendors or suppliers; documents reflecting Dana's confidentiality policy; documents reflecting the names of the Dana employees involved with the contract that is the subject of the underlying lawsuit; Dana's telephone records; and electronic copies of requested documents that no longer exist in hardcopy form.  (R. 490-496)  Dana has never provided any of these documents.  Surely, in a $20 million lawsuit, this document request is pretty narrow.[4]

Furthermore, the Bankruptcy Court never reviewed or considered Jasco's pending Notice to Produce.  Instead, it was swept along by Dana's counsel's insistence that this issue had been disposed of by the state court trial judge.  Even though Dana's counsel was well aware that the decision of the state court trial judge had been appealed, and that a decision from the Appellate Division of the New York State Supreme Court was imminent, Dana attached the state trial court judge's decision to its Reply (R. 526-539) and also stated that: "Justice Fisher concluded that Jasco's claimed need for additional discovery 'rings hollow.'" (R. 516)  The Bankruptcy Court, writing on November 6, 2007, held that: "The State Court found that Jasco's cry for additional discovery 'rings hollow' concluding that Jasco 'offers nothing but mere hope and speculation' that additional discovery would reveal evidence to prove the alleged conspiracy." (R. 21)  Three

---

[4] Dana's only real objection is that the paragraph asking for telephone records is too broad.  If Dana had ever explained to Jasco how its telephone records were organized and kept, it would have been very easy to narrow this one paragraph to the particular office and individuals at issue in this lawsuit.  Instead of seeking to address this one paragraph, however, Dana has refused to produce any documents in response to any of the other 14 paragraphs.

- 5 -

days later,[5] on November 9, 2007, the Appellate Division of the New York State Supreme Court reversed the trial court judge, holding that: "We conclude on this appeal that, because plaintiff [Jasco] established that discovery has yet to be completed, [New York] Supreme Court erred in granting . . . Rogers summary judgment . . . [citations omitted]. Indeed, plaintiff established that it requires further document discovery and must depose or complete the depositions of additional witnesses. " *Jasco Tools, Inc. v. Rogers*, 45 A.D.3d 1296, 844 N.Y.S.2d 810, 811 (4th Dep't, Nov. 9, 2007)

Of course, the Appellate Division had the benefit of having a full record on appeal before it. By contrast, the Bankruptcy Court gave no indication, either during oral argument or in its written Decision, of ever having looked at the Notice to Produce, much less considered the totality of the discovery that had taken place prior to Dana's bankruptcy filing. Instead, it simply accepted Dana's improper and false representations that discovery had been completed in state court and that the issue had been previously disposed of by the state court trial judge.

In addition to the handful of documents requested by Jasco in its Notice to Produce, Jasco has also indicated the need to depose one or two additional Dana witnesses. In its Answering Brief, Dana complains that Jasco "failed to identify the individuals it wished to depose . . . ." (Answering Brief, p. 14) However, four paragraphs of Jasco's Notice to Produce (par. 10-13) all seek the disclosure of "documents that set forth and identify each employee of Dana" involved with the Jasco contract. (R. 495) The point of these four paragraphs (out of a total of 15) was precisely to identify the one or two key Dana employees on the Jasco contract who could then be deposed. All of this was explained, with great emphasis, to Dana's counsel, but to no avail.

The Bankruptcy Court should have denied Dana's "summary judgment motion" based on Rule 56(f) alone. As the Second Circuit Court of Appeals has written: "We also note that Fed.R.Civ.P. 56(f) states that when it appears from the affidavits of a party opposing a motion for summary judgment that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may either deny the summary judgment motion or 'order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to

---

[5] Perhaps Dana's unseemly haste in trying to ram through its Objection can be explained, at least in part, by its concern that, once the Appellate Division ruled on the discovery issue, Dana's argument that Jasco's discovery request 'rings hollow' would be severely compromised.

be had or may make such other order as is just.' This the district court did not do." *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995).  The Bankruptcy Court's failure to deny Dana's "summary judgment motion" on this ground alone was error.

### Point III:  Dana Failed to Make Out a *Prima Facie* Entitlement to Summary Judgment

In its Answering Brief, Dana concedes that it failed to submit any affidavit or declaration in support of its "summary judgment motion," but claims that it "exceeded its burden far beyond a mere affidavit or declaration by submitting . . . ample evidence gleaned during discovery in this Lawsuit . . . . (Answering Brief, p. 15)  The problem is that the documents attached to Dana's unsworn, unverified Objection are not self-authenticating (*see* Rule 902 of Fed.R.Evid.), and Dana did nothing to authenticate these documents.  The documents attached to Dana's Objection are nothing more than inadmissible hearsay.

As the Second Circuit has written:

> The principles governing admissibility of evidence do not change on a motion for summary judgment.  Rule 56(e) provides that affidavits in support of and against summary judgment "shall set forth such facts as would be *admissible in evidence.*"  Fed.R.Civ.P. 56(e)(emphasis added); *see also Community of Roquefort v. William Faehndrich, Inc.,* 303 F.2d 494, 498 (2d Cir. 1962) ("Since the object [of summary judgment] is to discover whether one side has no real support for its version of the facts, the Rule specifically states that affidavits shall 'set forth such facts as would be admissible in evidence.' ") (citation omitted). Therefore, only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.  *Beyene v. Coleman Sec. Servs., Inc.,* 854 F.2d 1179, 1181 (9th Cir. 1988); *see also United States v. United States Gypsum Co.,* 340 U.S. 76, 85, 71 S.Ct. 169, 167 (1950) (right to present evidence to a court on summary judgment does not require the court to admit irrelevant evidence); *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 175-76 (5th Cir. 1990) ("As a general rule, the admissibility of evidence on a motion for summary judgment is subject to the same rules that govern the admissibility of evidence at trial.").  [*Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir. 1997).]

The party moving for summary judgment is required to make a *prima facie* showing of entitlement to summary judgment. "The burden of production imposed by Rule 56 requires the moving party to make a *prima facie* showing that it is entitled to summary judgment."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 330, 106 S.Ct. 2548, 2557 (1986).

- 7 -

In this case, Dana has failed to meet this burden. Therefore, Dana's "summary judgment motion" should have been denied on this ground alone, without any consideration of the adequacy or inadequacy of Jasco's response.

**Point IV:  The Bankruptcy Court Failed to Draw even the Most Obvious Inferences from the Facts Set Forth in Jasco's Papers**

When ruling on Dana's "summary judgment motion," the Bankruptcy Court was required to construe the facts in the light most favorable to Jasco and to resolve all ambiguities and draw all reasonable inferences against Dana. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2nd Cir. 2003). In this case, the Bankruptcy Court failed to draw even the most obvious inferences from the facts set forth in Jasco's Response. Had it done so, it would have been compelled to find that there were numerous issues of fact precluding summary judgment in this case.

A.  <u>What did Dana Know</u>

In its Answering Brief, Dana states: "Even if Nationwide improperly obtained Jasco's trade secrets through Messrs. Zicari and Convertino, there is no evidence showing that anyone at Dana ever learned of the alleged misappropriation." (Answering Brief, p. 20)  Both Dana and the District Court make much of the fact that Mr. Baldino was not present during the Nationwide sales presentation to Dana, and that he therefore did not have first-hand knowledge of what was said during the presentation. The fact that Jasco placed before the Bankruptcy Court the actual PowerPoint slides used by Nationwide during this presentation, and the fact that these slides explicitly referred to the fact that: "[Nationwide] has assessed [sic] this program with [former Jasco] employees *intimately knowledgeable* with this program" (R. 419)(emphasis added) carried no weight with the Bankruptcy Court. The fact that the two former Jasco employees, Convertino and Zicari, who had stolen Jasco's trade secrets, happened to be two of the three Nationwide "presenters" at this sales presentation, out of the thousands of Nationwide employees, carried no weight with the Bankruptcy Court. The fact that Convertino testified, at his deposition, that cycle times were a closely-held and valuable trade secret (R. 471-476) and the fact that the PowerPoint presentation specifically stated that: "Estimates of current machining cycles (costs) were based on review of representative prints *as well as past*

- 8 -

*experience with program* [at Jasco]" (R. 419)(emphasis added) carried no weight with the Bankruptcy Court.

Not only did the Bankruptcy Court fail to draw all reasonable inferences in favor of Jasco, but it also willfully closed its eyes to the only logical interpretation that could be given to the evidence placed before the court. There was certainly sufficient evidence before the Bankruptcy Court at least to raise a question of fact concerning Dana's knowledge that Nationwide was using stolen trade secrets in its bid for the Jasco contract.

   B. *The Importance of the Nationwide Bid*

The Nationwide bid, which was submitted to Dana before Dana commenced its "good faith" negotiations with Jasco, underbid Jasco's price by exactly 10% on some 130 different parts. (R. 428-433) The point is not, as Dana pretends, that: "Nationwide could not have offered a 10% price reduction unless it had misappropriated Jasco's trade secrets." (Answering Brief, p. 25) The point is that Nationwide had in its possession confidential information about Jasco's pricing plans, and that Dana necessarily had to realize that Nationwide had this information. The chances of a competitor without inside information being able to guess what the incumbent company intended to charge for a particular part to the penny, so as to be able to underbid the incumbent company by precisely 10%, in the absence of stolen information, are about the same as the chances of tossing a fair coin, and having it land on its edge. The chances of tossing this coin 130 times, and having it land on its edge 130 times in a row, are vanishingly small, yet that is what Nationwide managed to do in this case in its written bid to Dana. Dana had to know that Nationwide was using the actual prices that Jasco intended to charge Dana during the following year, which prices had been stolen by Convertino and Zicari from Jasco, yet both Dana and the District Court refused to draw this obvious inference.

The "coincidence" of being able to undercut Jasco by exactly 10% on some 130 separate parts was certainly sufficient at least to raise a question of fact concerning Dana's knowledge that Nationwide was using stolen trade secrets in its bid for the Jasco contract.

C. *Falsus in Uno, Falsus in Omnibus*

Two Dana employees submitted perjured affidavits to the state court in an unsuccessful effort to aid its co-defendants in obtaining summary judgment against Jasco in this case. (R. 479-487) The reason this is important is because it betrays a guilty conscience. Why would Dana employees lie about their dealings with Zicari and Convertino if they had nothing to hide?

Furthermore, the doctrine of falsus in uno, falsus in omnibus applies to this case. *See, e.g., Guerrand-Hermes v. Guerrand-Hermes,* 30 A.D.3d 338, 340, 819 N.Y.S.2d 231, 233 (1st Dep't, 2006). "[B]ecause the submission of such evidence naturally raises the question of the [party's] overall credibility, even ancillary evidence sometimes supports *falsus in uno. See generally Zhi Wei Pang v. Bureau,* 448 F.3d 102, 119 (2d Cir. 2006)." *Siewe v. Gonzales,* 480 F.3d 160, 171 (2d Cir. 2007).

Under the circumstances, the Bankruptcy Court should have drawn an unfavorable inference against Dana, based on the existence of these perjured affidavits alone.

## CONCLUSION

Based on all of the foregoing reasons, Jasco respectfully requests that the Decision of the Bankruptcy Court be reversed, and that Jasco's Claim be allowed in an amount to be determined by the state court.

Dated:  January 25, 2008               Respectfully submitted,

                                             s/Alexander Geiger
                                             Alexander Geiger, Esq. (AG-8974)
GEIGER and ROTHENBERG, LLP
45 Exchange Street, Suite 800
Rochester, NY  14614
Tel.:  (585) 232-1946
Fax:  (585) 232-4746

*Attorneys for Jasco Tools, Inc.*