UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X

In re                                                           :

DANA CORPORATION,                                :                07 Civ. 11144 (RMB)

          Debtor.                                        :                Chapter 11

--------------------------------------------------------X

JASCO TOOLS, INC.,                                 :                Case No. 06-10354 (BRL)

          Appellant,                                   :

          v.                                               :

DANA CORPORATION,                                :                **ORDER**

          Appellee.                                    :

--------------------------------------------------------X

## I.    Background

       This is an appeal from a Southern District of New York Bankruptcy Court

decision as described below.

       On or about March 3, 2006, Dana Corporation ("Dana" or "Appellee") filed for

reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101–74, in the

United States Bankruptcy Court for the Southern District of New York ("Bankruptcy

Court") (Lifland, Bankr. J.). (See Ch. 11 Pet., Mar. 3, 2006, at 1.) On or about

September 15, 2006, Jasco Tools, Inc. ("Jasco" or "Appellant") filed a Proof of Claim

("Claim") against Dana's estate for $20 million based upon a (pending) lawsuit filed by

Jasco against Dana on or about July 31, 2002, in the Supreme Court of the State of New

York, Monroe County, and alleging, among other things, breach of contract,

misappropriation of trade secrets, prima facie tort, and unjust enrichment. (See Claim,

dated Sept. 15, 2006, Record on Appeal ("R.") 32.) Jasco alleges in the state court action

that Jasco was Dana's precision-machined castings supplier under a Purchase Agreement,
dated July 21, 1995, ("Agreement") and that Dana conspired with Jasco's competitor,
Nationwide Precision Products Corporation ("Nationwide"), to replace Jasco with
Nationwide as Dana's supplier "by obtaining from [former Jasco employees] . . . trade
secret information belonging to Jasco." (Complaint, R. 100.) On or about August 31,
2007, Dana filed an Objection ("Objection") to Jasco's Claim, requesting that the
Bankruptcy Court issue an order "disallowing and expunging the Jasco [C]laim" because
"the underlying claims on which it is based are so lacking in merit that Dana would be
entitled to summary judgment as a matter of law." (Objection, dated Aug. 31, 2007, R.
69, 73.)[1]

On or about November 6, 2007, the Bankruptcy Court issued a Decision
("Decision") granting Dana's motion for summary judgment disallowing Jasco's Claim
because, among other reasons, "Jasco's breach of contract claim does not give rise to
damages" and "there is no evidence connecting Dana to the alleged conspiracy" to
misappropriate Jasco's trade secrets. (Decision, R. 24–25, 28.)

On or about November 13, 2007, Jasco appealed, pursuant to 28 U.S.C. § 158(a),
from the Bankruptcy Court's Decision, arguing, among other things, that: (1) "the
Objection filed by Dana in this matter was not a motion for summary judgment, and it
could not be unilaterally converted by Dana into such"; (2) "[t]he Bankruptcy Court
should have denied Dana's summary judgment motion based on [Jasco's need for

---

[1]     At an initial status hearing ("Hearing") on October 17, 2007, the Bankruptcy
Court stated that it was "fully familiar with all the issues before the parties,
and . . . prepared to entertain them on a basis for summary judgment," and gave the
parties, "further time to . . . augment [their] papers . . . " (Hearing Transcript, dated Oct.
17, 2007, ("H'rg Tr.") R. 645.)

additional discovery] alone"; (3) "[t]he failure of Dana to negotiate in good faith with Jasco, as required by . . . the Purchase Agreement and the applicable law, constitutes a breach of contract"; and (4) "the Bankruptcy Court failed to draw even the most obvious inferences from the facts set forth in Jasco's Response [to Dana's motion for summary judgment]." (Jasco Brief, dated Dec. 27, 2007, ("Jasco Br.") at 19, 21, 26; Jasco Reply Brief, dated Jan. 25, 2008, ("Jasco Reply") at 8.)

Dana counters, among other things, that: (1) "Dana's Objection expressly requested dispositive relief"; (2) "the Bankruptcy Court exercised proper discretion in precluding further discovery"; (3) "contractual provisions that make renewal of an agreement subject to future negotiations between the parties are not binding and cannot be enforced"; and (4) "Jasco's [factual] inferences are improper as a matter of law." (Dana Brief, dated Jan. 14, 2008, ("Dana Br.") at 9, 14, 17, 25) (internal quotations and citation omitted.)

On or about January 25, 2008, Jasco filed a reply brief. (See Jasco Reply.) The parties waived oral argument.

**For the reasons set forth below, the Bankruptcy Court's Decision is affirmed.**

## II.    Standard of Review

"In deciding a motion for summary judgment on a proof of claim, a Bankruptcy Court is bound by [Federal Rule of Civil Procedure] 56." In re Drexel Burnham Lambert Group, Inc., 161 B.R. 902, 905 (S.D.N.Y. 1993). "[A] Bankruptcy Court's decision not to permit additional discovery under [Federal Rule of Civil Procedure] 56(f) may be reversed only upon a finding of abuse of discretion." In re CIS Corp., No. 91 Civ. 6075, 1991 WL 253777, at *2 (S.D.N.Y. Nov. 19, 1991).

"On appeal, a district court reviews a bankruptcy court's finding of facts under a clearly erroneous standard . . . and its conclusions of law de novo." In re Enron Corp., 364 B.R. 482, 485 (S.D.N.Y. 2007) (citing In re AroChem Corp., 176 F.3d 610, 620 (2d Cir. 1999)). "[A] bankruptcy court's grant of summary judgment is reviewed de novo." In re The Warnaco Group, Inc., No. 01 B 41643, 2006 WL 278152, at *3 (S.D.N.Y. Feb. 2, 2006); see also In re Teligent Inc., 324 B.R. 479, 487 (S.D.N.Y. 2005) ("Where the appellant challenges a grant of summary judgment, the appellate court reviews the lower court's ruling de novo because the determination that there are no genuine issues of material fact is a legal conclusion.").

## III.    Analysis

### (1)    Dana's Motion for Summary Judgment

Jasco argues, among other things, that the Bankruptcy Court inappropriately "condoned Dana's 'conversion' of its Objection" to Jasco's Proof of Claim into a motion for summary judgment and "deprived Jasco of any meaningful opportunity to submit any responsive papers in opposition." (Jasco Br. at 18–19.) Dana counters, among other things, that its "Objection requested the Bankruptcy Court to expunge Jasco's [Claim] because Dana was entitled to summary judgment" and the Bankruptcy Court "granted [Jasco's] request for more time to make any additional submissions that Jasco deemed necessary." (Dana Br. at 10–11.)

The Bankruptcy Court properly resolved Dana's Objection as a motion for summary judgment. See In re Drexel Burnham, 161 B.R. at 905; see also In re Allegheny Health, Educ. and Research Found., 321 B.R. 776, 783 n.1 (W.D. Pa. 2005) ("[A]n objection to [a Proof of Claim] generally . . . may be disposed of via summary

judgment.")  And, the Bankruptcy Court gave Jasco sufficient notice and time to respond

to Dana's Objection by "adjourn[ing] the [O]bjection to allow the parties to supplement

their pleadings."  (Decision, R. 14); see Mullane v. Central Hanover Bank & Trust Co.,

339 U.S. 306, 314 (1950); Halpern v. Rosenbloom, 459 F. Supp. 1346, 1348 (S.D.N.Y.

1978) ("[D]efendant fails to show that he suffered any prejudice by reason of the late

service [of plaintiffs' cross-motion for summary judgment], other than to say in

conclusory fashion that he was not given 'an appropriate time to respond.'").

    **(2)    Jasco's Request for Additional Discovery**

      Jasco argues, among other things, that "additional limited discovery is required in

the underlying action, such as the deposition of one or two additional Dana employees,

before the case is ready for . . . a dispositive motion."  (Jasco Br. at 20.)  Dana counters,

among other things, that "[b]ased on the extraordinary amount of discovery already taken

in the State Court case" and "the unreasonable nature of the requested discovery, the

Bankruptcy Court acted well within the limits of its broad discretion" in denying Jasco's

request for additional discovery.  (Dana Br. at 14.)

      " [A] bankruptcy court is provided . . . broad discretion of power in the

administration of a bankruptcy case."  In re Greene, 103 B.R. 83, 87 (S.D.N.Y. 1989)

(internal quotations and citation omitted).  "Whether to grant [Jasco] the opportunity to

conduct [additional] discovery was a matter that rested within the sound discretion of the

bankruptcy judge."  In re Enron Corp., No. M-47, 2007 WL 120458, at *3 (S.D.N.Y. Jan.

17, 2007).  Jasco has not shown that the Bankruptcy Court abused its discretion in

concluding that additional discovery "at this stage [is] meritless," as "Jasco had [had]

nearly four years to conduct discovery," during which Jasco took "18 depositions" and

received "voluminous documentation" from Dana.  (Decision, R. 21–22); see Peterson v.

City College, 32 F. Supp. 2d 675, 689 (S.D.N.Y. 1999) (plaintiff had "full and fair

opportunity to conduct discovery" where "[she] had some five years in which to conduct

discovery"); In re Rockefeller Center Properties, 46 Fed. Appx. 40, 43 (2d Cir. Sept. 19,

2002) (affirming bankruptcy court's rejection of "[appellant's] bid to conduct additional

discovery, pursuant to Rule 56(f)").

   **(3)    Jasco's Breach of Contract Claim**

   Jasco argues, among other things, that the renewal clause of the Agreement

between Dana and Jasco, which provides that "[t]he parties agree to meet in the second

quarter of the year 1999 to negotiate an extension of the term," imposed upon the parties

the affirmative duty to negotiate, and that Dana's "failure to engage in good faith

negotiations with Jasco . . constitutes a breach of Dana's obligations pursuant to . . . [the]

Agreement."  (Agreement, R. 113; Jasco Br. at 23.)  Dana counters, among other things,

that "[w]here, as here, the obligation to become binding rests on [some] future agreement

to be reached by the parties . . . there is no contract" and "[t]he obligation to negotiate in

'good faith' does not change the enforceability of a renewal clause premised on future

negotiations." (Dana Br. at 19) (internal citation omitted.)

   Where "an agreement to agree leav[es] open for future negotiations essential

terms of the parties' relationship, no enforceable contract is created."  Enercomp, Inc. v.

McCorhill Pub., Inc., 873 F.2d 536, 546 (2d Cir. 1989) (internal quotations and citation

omitted).  The Bankruptcy Court properly held that the Agreement's renewal clause

"rests on the need to negotiate a future, extended agreement, and thus it is inherently

unenforceable."  (Decision, R. 23); see Candid Productions Inc., v. Int'l Skating Union,

6

530 F. Supp. 1330, 1336 (S.D.N.Y. 1982) (finding unenforceable "good faith negotiation clause" under which the parties "have not even committed themselves to contract; they have only agreed to negotiate").

**(4)    Factual Inferences**

Jasco argues, among other things, that Dana knew that Jasco's competitor, Nationwide, was employing "former Jasco employees intimately knowledgeable with [Dana's business]," and that the Bankruptcy Court "refused to draw [the] obvious inference" from this evidence that "Dana and Nationwide conspired . . . to steal [Jasco's] trade secrets" in an effort to replace Jasco with Nationwide as Dana's supplier under the Agreement.  (Jasco Br. at 30; Jasco Reply at 8–9.)  Dana counters, among other things, that Nationwide's employment of former Jasco employees "is conduct consistent with permissible business competition" and that the evidence presented by Jasco "cannot give rise to a reasonable inference that . . . the parties actively conspired to misappropriate Jasco's trade secrets."  (Dana Br. at 23, 27) (internal quotations and citation omitted.)

The Bankruptcy Court properly determined that "[t]he fact that Dana knew that [former Jasco employees] became Nationwide employees is not probative of a conspiracy or proof of trade secret misappropriation," or prima facie tort.  (Decision, R. 25–26); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 597 & n.21 (1986) ("[C]onduct that is as consistent with permissible competition as with illegal conspiracy does not, without more, support even an inference of conspiracy."); see also Universal Reinsurance Co. Ltd. v. St. Paul Fire and Marine Ins. Co., No. 95 Civ. 8436, 1999 WL 771357, at *9 (S.D.N.Y. Sept. 29, 1999) ("Despite years of discovery, plaintiffs have not

substantiated their allegations that [defendant] used [plaintiffs'] confidential information.").

## IV.     Conclusion and Order

For the foregoing reasons, the Bankruptcy Court's Decision is affirmed and the appeal in 07 Civ. 11144 [#1] is dismissed.

Dated: New York, New York
        May 9, 2008

_RMB_

_____
RICHARD M. BERMAN, U.S.D.J.